Georgia A. Staton, Bar #004863
Randall H. Warner, Bar #014695
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Telephone:  (602) 263-1700
Fax:  (602) 200-7854
gstaton@jshfirm.com

Attorneys for Defendants, City of Phoenix;
Jack Harris; Lonetta Sanders; John Bell and
Maria Acosta

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| KEVIN CRAWFORD; TRACY CRAWFORD, individually, as husband and wife and as parents of TREVOR CRAWFORD, KATELYN CRAWFORD, KIRSTEN CRAWFORD, KARI CRAWFORD and KRYSTAL CRAWFORD,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PHOENIX, an incorporated political subdivision of the State of Arizona; JACK HARRIS, both individually and in his official capacity as Chief of the Phoenix Police Department; LONETTA SANDERS, both individually and in her official capacity as a Phoenix Police Officer; JOHN BELL, both individually and in his official capacity as a Phoenix Police Officer, and MARIA ACOSTA, both individually and in her capacity as a Phoenix Police Officer,<br><br>Defendants. | NO. CV 05-2444-PHX-JAT<br><br>**MOTION FOR SUMMARY JUDGMENT**<br><br>(Oral Argument Requested) |

Pursuant to Fed. R. Civ. P. 56, Defendants move for summary judgment dismissing all claims with prejudice.

Plaintiff Kevin Crawford was accused by his daughter of molesting her when she was younger. Based on that accusation, the Phoenix Police Department initiated an investigation. At the same time, Child Protective Services informed Mr. Crawford and his wife that they had two choices, either Mr. Crawford could move out of the home pending the investigation or Child Protective Services could remove the children from the home. Mr. Crawford moved out. He lived away from his family for six weeks until Child Protective Services informed him that he could move back into the home.

In this lawsuit, Mr. Crawford and his family claim that Phoenix police are at fault for the time they lived apart. They have not sued Child Protective Services. Summary judgment is warranted because none of Plaintiffs' allegations state a claim either under federal or state law.

This Motion is supported by the accompanying Memorandum of Points and Authorities, Defendants' Separate Statement of Facts ("SOF") and all pleadings on file.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   FACTS.**

Sixteen-year-old Krystal Crawford was seeing a psychologist for cutting herself with a razor when she revealed that her father molested her when she was little. The psychologist reported the statement to Child Protective Services, which relayed the information to the Phoenix Police Department for investigation.[1]  [SOF ¶¶ 1-2.]

On June 18, 2004, Officer Maria Acosta interviewed Krystal's mother, Tracy Crawford. According to Mrs. Crawford, Krystal said that, several years earlier, she and her father were napping together when he took off her panties and "started to rub her and that he was licking her." She said it only happened once. [SOF ¶¶ 3-5.]

---

[1] Though not germane to this Motion, Mr. Crawford was and is a Phoenix police officer.

1

1    Mrs. Crawford then told Officer Acosta that when her 13-year-old daughter,
2 Kari, was 3 or 4 years old, she reported that her father had "taken her panties off and was
3 starting to rub her" in her private areas. When Officer Acosta asked Mrs. Crawford
4 whether she believed her daughters, she said she did. [SOF ¶¶ 6-7.]
5    Officer Acosta then spoke with Krystal. She said that when she was 6 or 7,
6 her father molested her when they were taking a nap together. As she put it: "He touched
7 me inappropriately and licked me." Another officer, Terry Cleary, interviewed Kari, who
8 had no memory of her father touching her inappropriately. [SOF ¶¶ 8-11.]
9    Later that day, Tracy Crawford confronted her husband in a recorded
10 telephone call. Mr. Crawford denied molesting either girl, but his wife said she believed
11 Krystal and did not believe him:

12    T CRAWFORD:   [crying] Cause I don't think Krystal is lying, I believe her.
13
    K CRAWFORD:   So you think I'm lying?
14
    T CRAWFORD:   That's two girls, two different times.
15
    K CRAWFORD:   So you think I'm lying?
16
    T CRAWFORD:   I don't think that you're telling me the truth.
17
18 [SOF ¶¶ 12-13.]
19    When an allegation of sexual abuse is made, police are responsible for
20 investigating whether a crime has been committed and Child Protective Services ("CPS")
21 is responsible for protecting the children. CPS case worker Brenda Cagle told Tracy
22 Crawford that she had two choices pending the police's investigation. Either Mr.
23 Crawford could voluntarily separate from his children or CPS could serve a "Temporary
24 Custody Notice" removing the children from his custody. [SOF ¶¶ 14-16.]
25    Mrs. Crawford testified that she was informed of these two options both by
26 Ms. Cagle and by Officer Acosta. It is undisputed, however, that Phoenix Police have no

2

authority either to remove children from their parents or to force a parent to separate from his children. That authority lies solely with CPS, and the only thing CPS can do is remove the children; it cannot force a parent to move out. [SOF ¶¶ 17-19.] As explained by Ms. Cagle's supervisor, Rhonda Cash:

> Q. BY MS. STATON: Are you aware from your review of this file that Mr. Crawford was removed from the home during the pendency of the investigation?
>
> A. Yes. I am not sure if "removed from the home" is the correct word, we asked him if he would leave for the, you know, to reduce the trauma to the children.
>
> Q. All right. What you are saying is --
>
> A. We don't have the authority to remove adults from their home.
>
> Q. Right. Okay, let's make that clear. The only authority you would have would be to remove the child from the home?
>
> A. Correct.
>
> Q. So you understood, then, that Mr. Crawford left the home during the pendency of the investigation?
>
> A. Yes.

[SOF ¶ 20.]

It was CPS officials who decided Mr. Crawford should separate from his family. Ms. Cagle testified that she made the decision in consultation with Ms. Cash. Ms. Cash testified that separating a suspect from his family is solely a decision for CPS:

> Q. Would you as the supervisor consult with a law enforcement agency before making that decision or is that solely your decision?
>
> A. It's solely our decision. The goal of the police department and our goal are totally separate. They determine if a crime has been committed, we determine if the child is safe or not.

[SOF ¶¶ 21-23.]

3

1    Mr. Crawford elected to move out rather than risk that CPS would seek a
2    Temporary Custody Notice.  He moved out on June 22, 2004.  That day, his attorney,
3    Stanley Slonaker, contacted Ms. Cagle regarding the separation of Mr. Crawford from his
4    family.  Ms. Cagle explained that in situations of alleged child abuse, either the child or
5    the parent has to be removed pending the police's investigation.  [SOF ¶¶ 24-27.]

6    While Phoenix police were conducting their investigation, Tracy Crawford's
7    story started to change.  Among other things, she reported that she no longer believed her
8    husband molested her daughters.  Instead, she thought Krystal might have been molested
9    by someone else, a friend of her brother's who was later convicted of molesting boys.  She
10   admits, however, that she has no evidence that person molested Krystal.  And as recently
11   as her deposition, Krystal continues to recall that her father molested her.  [SOF ¶¶ 28-
12   32.]

13   On August 2, 2006, Krystal's counselor -- the same one who originally
14   disclosed the molestation to CPS -- sent a letter to CPS stating that he believed Kevin
15   Crawford should be allowed to return to the home.  The same day, CPS supervisor
16   Rhonda Cash received a phone call from Tracy Crawford also asking that Mr. Crawford
17   be allowed to return.  Ms. Cash agreed.  She testified that this decision was solely hers:

> Q.   The decision to allow the father to return to the home was your decision?
>
> A.   Yes.
>
> Q.   Did you consult with anybody before making the decision?
>
> A.   No.

[SOF ¶¶ 33-36.]

24   Mr. Crawford returned to his home on August 2, 2004.  Ultimately, the
25   Maricopa County Attorney's Office decided not to file charges.  [SOF ¶¶ 37-38.]

26

4

## II. SUMMARY JUDGMENT MUST BE GRANTED AS TO STATE LAW CLAIMS.

Summary judgment must be granted as to Plaintiffs' state law claims for two reasons. First, Defendants are entitled to immunity under A.R.S. § 13-3620(J). Second, Plaintiffs cannot establish the necessary elements of their state law claims.

### A. Under A.R.S. § 13-3620(J), Defendants Are Immune From Any State Law Claims.

A.R.S. § 13-3620 addresses the duty and authority of certain persons to report allegations of child abuse. It is a comprehensive statute designed to require reporting in certain circumstances and permit reporting in an even broader array of circumstances. Subsection J of the statute provides qualified immunity for, among others, those who report abuse and those who investigate such reports. The statute states:

> A person who furnishes a report, information or records required or authorized under this section, or a person who participates in a judicial or administrative proceeding or investigation resulting from a report, information or records required or authorized under this section, is immune from any civil or criminal liability by reason of that action unless the person acted with malice or unless the person has been charged with or is suspected of abusing or neglecting the child or children in question.

A.R.S. § 13-3620(J).

The purpose of this statute is plain. It recognizes that those who report and investigate allegations of abuse may be inhibited by the threat of legal reprisal. It therefore provides immunity for such persons unless they act with malice.[2]

This statute protects Defendants. All of them are being sued for acts and omissions arising out of their investigation of Mr. Crawford based on credible allegations of abuse. To use the language of the statute, Plaintiffs are seeking to impose civil liability

---

[2] The statute was not always so broad. Previous versions provided immunity only for those who made reports or who participated in judicial proceedings resulting from such reports. In 1986, the legislature expanded the immunity to include, among others, those participating in a child abuse investigation. *See* 1986 Ariz. Sess. Laws. Ch. 347, § 1.

5

on Defendants by reason of their participation in an "investigation resulting from a report" of abuse. A.R.S. § 13-3620(J). Defendants are therefore entitled to immunity unless Plaintiffs proves malice.

Plaintiffs cannot prove malice. It is undisputed that Mr. Crawford's wife and daughter reported two separate incidents of sex abuse. Defendants had a duty to take those reports seriously and investigate them thoroughly. And they had to continue the investigation even when Mrs. Crawford started to recant. There is no evidence that any of the Defendants intended any harm or harbored any malice toward Plaintiffs. *See L.A.R. v. Ludwig*, 170 Ariz. 24, 28, 821 P.2d 291, 295 (App. 1991) (granting immunity to child protective services employee where there was no evidence of malice). For this reason alone, the state claims must be dismissed.

**B.    Plaintiff Cannot State A Negligence Claim.**

Even without the protection of the immunity statute, Defendants cannot be liable for negligence. Plaintiffs appear to allege two things against the police. First, they allege that police wrongfully removed Mr. Crawford from his home and prevented him from returning. Second, they allege that police did not conduct a speedy enough investigation. Both theories fail as a matter of law.

**1.    *The Police Did Not Remove Mr. Crawford From His Home Or Prevented Him From Returning.***

Phoenix police cannot be liable for negligently removing Mr. Crawford from his home because they did not remove him. In fact, no one did. Nothing in either the record or Arizona law suggests police have the authority to remove an adult from his home pending a sex abuse investigation. The only such authority that exists -- and it rests with CPS -- is to remove the children by means of a Temporary Custody Notice. [SOF ¶¶ 39-40.] *See* A.R.S. §§ 8-821 et seq.[3] And there is no evidence that police did remove Mr.

---

[3] Police are authorized to remove a child in certain emergency circumstances not present here. A.R.S. § 8-821(B).

Crawford. Rather, faced with the possibility of an order taking his children out of their home, he chose to move out. [SOF ¶ 41.]

Plaintiffs may argue that Phoenix police told them Mr. Crawford had to move out. The record does support an inference that Officer Acosta advised Plaintiffs of their options -- either Mr. Crawford could move out or CPS could remove the children. [SOF ¶ 42.] This, however, was accurate information. Police cannot be liable for explaining Plaintiffs' options to them.

To state a claim for negligence, Plaintiffs have to show both that Defendants breached a duty of care, and that the breach proximately caused their harm. *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). Plaintiffs can show neither. Police owed Plaintiffs no duty to refrain from telling them their options under the law. And there is no causal relationship between what Officer Acosta allegedly told Tracy Crawford and the fact that Mr. Crawford was separated from his family for six weeks. That separation resulted from the choice Mr. Crawford made in the face of CPS' power to remove the children, not from anything the police did.

### 2. *The Police Owed No Duty To Plaintiffs To Conduct A Speedy Investigation.*

Plaintiffs also claim Phoenix police were negligent by not concluding their investigation faster. This argument also fails for lack of both duty and proximate causation.

Duty is "an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." *Ontiveros*, 136 Ariz. at 508, 667 P.2d at 208, quoting William L. Prosser, Handbook on the Law of Torts § 42, at 324-27 (4th ed.1971). Arizona's statutes reflect a strong policy favoring the thorough investigation of child abuse claims. *See, e.g.,* A.R.S. § 13-3620; *L.A.R.*, 170 Ariz. at 27, 821 P.2d at 294 (discussing the policy behind Section 13-3620). Here, the

accusations were serious and credible. They consisted of separate incidents involving two different children yet almost identical conduct. They involved a mother who believed the accusations made by her two daughters. [SOF ¶¶ 43-44.] Given those allegations, even Plaintiffs concede that police had a duty to conduct a thorough investigation. [SOF ¶ 45.]

Defendants know of no case holding that police owe suspects a duty to conduct their investigation in a certain amount of time or a particular manner so as to minimize collateral consequences like separating a suspect from his family. Imposing such a duty would run counter to Arizona's strong policy favoring the thorough investigation of child abuse allegations. *See e.g., Wilmer v. State*, 841 P.2d 453, 455 (Idaho 1993) ("to hold investigators liable for their negligent acts would impair vigorous prosecution and have a chilling effect on law enforcement").

There is also no causal connection between the time Mr. Crawford was apart from his family and the manner in which Phoenix police conducted their investigation. It is undisputed that CPS decides when it is appropriate for a suspect to have contact with his children. [SOF ¶ 46.] In this case, Mr. Crawford's return was not related to the police investigation. It was based on a letter that CPS received from the family's counselor. [SOF ¶ 47.]

For these reasons, Plaintiffs cannot state a negligence claim.

### C. **Plaintiff Cannot State An Assault Claim.**

Nor can Mr. and Mrs. Crawford state a claim for assault. The assault claim alleges that, because of Officer Acosta's investigation, Kevin and Tracy Crawford had an apprehension that Kevin would be arrested and prosecuted. This is not an assault. Assault occurs where a person suffers imminent apprehension of a harmful or offensive contact with his or her person, and it requires that the tortfeasor intend harm. Restatement (Second) of Torts § 21 (1977). Here, there is no evidence that any of Defendants threatened Plaintiffs with bodily harm, nor that they intended to cause them any bodily

harm or apprehension of bodily harm. Moreover, "imminent" for assault purposes means immediate, not some time in the future. *See* Dan B. Dobbs, Law of Torts § 34, at 65 (2001) ("Future danger, or a threatening atmosphere without reason to expect some immediate touching, in other words, is not enough."). The assault claim is without merit.

### D. **Plaintiff Cannot State A Claim For Intentional Infliction Of Emotional Distress.**

Nor can Plaintiffs state an intentional infliction of emotional distress claim. To prove such a claim, they must show that Defendants' conduct in investigating Mr. Crawford was "extreme" or "outrageous." *Citizen Publishing Co. v. Miller,* 210 Ariz. 513, 516, 115 P.3d 107, 110 (2005). They must also establish that Defendants acted recklessly or intentionally; negligence is not enough. *Id.* While Plaintiffs may be critical of the investigation, nothing they allege rises to the level of extreme or outrageous conduct. Nor is there evidence that Defendants either intended to cause Plaintiffs emotional distress or acted recklessly. *See, e.g., Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999) (plaintiff could not establish intentional infliction of emotional distress claim against investigator); *Nugent v. Hayes*, 88 F. Supp. 2d 862, 869 (N.D. Ill. 2000) (same).

## III. SUMMARY JUDGMENT MUST BE GRANTED AS TO THE SECTION 1983 CLAIM.

Summary judgment must be granted as to Plaintiffs' Section 1983 claim because Phoenix police did not deprive them of any constitutionally protected interest. In addition, the individual officers are entitled to qualified immunity and Plaintiffs cannot establish the existence of an unconstitutional policy so as to impose liability on the City.

### A. **Phoenix Police Did Not Deprive Plaintiffs Of Any Constitutionally Protected Interest.**

To state a Section 1983 claim against the City of Phoenix and its police officers, Plaintiffs must establish both that they were deprived of a constitutionally protected interest and that Defendants were the ones who deprived them of it. *Flagg*

9

*Brothers v. Lefkowitz*, 436 U.S. 149, 156 (1978); *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  They cannot establish either.

### 1. *Plaintiffs Cannot State A Section 1983 Claim Based On Mr. Crawford's Decision To Move Out.*

Mr. Crawford and his family have a constitutionally protected interest in their relationship with one another, but they were not deprived of that interest.  Rather, Mr. Crawford made the ***choice*** to move out of his home pending the investigation of child abuse allegations.  This undoubtedly was a difficult choice; had he refused, he faced the possibility that Child Protective Services would initiate procedures to remove his children from the home.  But it was not an unconstitutional choice.

It does not violate a suspect's constitutional rights to force him to choose between accepting a compromise and asserting a constitutional right.  *United States v. Montilla*, 870 F.2d 549, 553 (9th Cir. 1989).  Most often, this occurs in the context of a plea bargain, in which an accused chooses to forgo trial (and the possibility of acquittal) in exchange for a lighter sentence.  Giving an accused such a choice does not violate his constitutional rights.  As the Supreme Court has noted, the Constitution does not "forbid[] every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.  *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973).

Mr. Crawford's decision was no different from that of an accused faced with a plea bargain.  He could have chosen to fight CPS and he would have had his day in court.  *See, e.g.,* A.R.S. §§ 8-823 to -826.  If he won, he would not have to separate from his children, but if he lost they would be taken away from him.  Instead of taking that risk, he elected to separate himself from his family voluntarily.  That this choice was difficult does not make it unconstitutional.  *Stuard v. Stewart*, 401 F.3d 1064, 1068 (9th Cir. 2004); *United States v. Davis*, 960 F.2d 820, 829 (9th Cir. 1992).

Moreover, Mr. Crawford had a lawyer at the time he separated from his family, yet did not to seek any judicial recourse or other due process. Plaintiffs cannot forgo all process at the time of the alleged deprivation, and then claim later that they were denied due process. *See, e.g., Whitner v. Davis*, 410 F.2d 24, 29 (9th Cir. 1969) (where available process provided a means for forestalling a deprivation of rights, failure to take advantage that process precludes Section 1983 claim). Plaintiffs cannot complain that they were denied due process any more than a plea bargaining defendant can complain that he was convicted without a trial.

### 2. *Phoenix Police Have No Power To Remove A Parent.*

And even if Plaintiffs' constitutional rights could be found to have been violated, they were not violated by Defendants. The undisputed fact is that Phoenix police do not -- and have no power to -- either remove parents from homes or remove children from their parents. That is solely within the responsibility and authority of Child Protective Services. [SOF ¶ 48.] The City of Phoenix and its officers cannot be liable for conduct they lack the power to control or remedy. *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir. 1994).

*Parks School of Business v. Symington*, 51 F.3d 1480 (9th Cir. 1995), is illustrative. The plaintiff there, a private college, filed suit after Arizona's designated guarantor of student loans terminated the college's participation in the Arizona loan guarantee program. It sued both the guarantor, a private company, and the Governor of Arizona. The Court held that no Section 1983 claim could be asserted against the Governor because he "had no power to affect or review the termination at issue here." 51 F.3d at 1487. That power belonged to the U.S. Secretary of Education. *Id.*

The same is true here. The government agency with power to separate Mr. Crawford from his family is CPS. Even if the choice imposed on Mr. Crawford was unconstitutional -- and it was not -- Defendants cannot be liable for that choice.

### 3. *There Is No Constitutional Right To A Speedy Investigation.*

Plaintiffs may argue that Phoenix police controlled the length of time Mr. Crawford was separated from his family because they controlled their own investigation. The facts do not bear out this argument. Mr. Crawford's separation from his family ended not because of anything the police did, but because a letter from Plaintiffs' counselor convinced CPS to assent to Mr. Crawford moving back in. [SOF ¶ 50.]

But even if the length of the investigation or the manner in which it was conducted affected the time Mr. Crawford was separated from his family, that still does not give rise to a Section 1983 claim. Plaintiffs had no right to a speedy investigation. *See United States v. Lovasco*, 431 U.S. 783, 796 (1977) (no due process claim based on investigative delay). And to the extent Plaintiffs claim the investigation was not conducted in a reasonable manner, that allegation fails because there is no constitutional claim for negligently inflicted injury. *Daniels v. Williams*, 474 U.S. 327, 333 (1986).

### B. The Individual Defendants Are Entitled To Qualified Immunity.

For the foregoing reasons, Plaintiffs cannot establish a constitutional violation. But even if they could, the individual Defendants, all Phoenix police officers, are entitled to qualified immunity. A law enforcement officer is entitled to qualified immunity if a reasonable officer could have believed his actions lawful in light of clearly established law. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Here, no clearly established law would put police officers on notice that they would violate Plaintiffs' constitutional rights by not completing their investigation more quickly or by assisting Child Protective Services in its work.

### C. The City Does Not Have Vicarious Liability.

Nor has Plaintiff established a basis for holding the City liable. Under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), there is no respondeat superior

liability under Section 1983. 436 U.S. at 691. A government entity can only be liable when the constitutional harm is caused by an official government policy or custom, rather than the isolated acts of one or more government employees. *Id.* at 694. Here, there is no evidence of any unconstitutional City policy or custom.

### III. CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment dismissing all claims with prejudice.

DATED this 15th day of November, 2006.

JONES, SKELTON & HOCHULI, P.L.C.


BY /s/ Randall H. Warner
   Georgia A. Staton
   Randall H. Warner
   2901 North Central Avenue, Suite 800
   Phoenix, Arizona  85012
   *Attorneys for Defendants, City of Phoenix; Jack Harris; Lonetta Sanders; John Bell and Maria Acosta*

13

ORIGINAL of the foregoing e-filed this 15th day of November, 2006, with:

Clerk of the District Court
District of Arizona

Copies mailed this same date to:

Hon. James A. Teilborg
United States District Court
Sandra Day O'Connor U.S. Courthouse
Suite 523
401 West Washington Street, SPC 51
Phoenix, AZ  85003-2154
602-322-7560

Stanley M. Slonaker, Esq.
Attorney at Law
1440 East Washington Street
Suite 100
Phoenix, AZ  85034-1163
*Attorney for Plaintiffs*
602-258-1121

Steven C. Goodrich, Esq.
Assistant Attorney General
ATTORNEY GENERAL'S OFFICE
1275 West Washington Street
Phoenix, AZ  85007
*Attorney for ADES*
602-542-9868


/s/  Rose Crutcher

1671117.1