**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Kevin Crawford; et al, | ) | No. CV 05-2444-PHX-JAT |
| Plaintiffs, | ) ) | **ORDER** |
| vs. | ) ) | |
| City of Phoenix; et al, | ) ) | |
| Defendants. | ) ) ) | |

Pending before the Court is Defendants' Motion For Summary Judgment (Doc. #50). The Court now rules on the motion.

**I.    Factual Background**

In Spring 2004, Plaintiffs Tracy and Kevin Crawford placed their then 16-year-old daughter, Plaintiff Krystal Crawford, in therapy for cutting herself and other issues. On June 13, 2004, while in therapy, Krystal told her mother that her father Kevin had removed her panties on a single occasion and that he had licked and rubbed her vaginal area. Krystal told her mom that this incident occurred while Tracy was in the hospital for the birth of Krystal's younger sister, Kirsten Crawford. The next day, Krystal and her mom met with Dr. Lauritsen. Krystal repeated her story to the doctor.

Dr. Lauritsen reported the allegation of abuse to the Arizona Department of Economic Security/Child Protective Services ("CPS"). CPS assigned the case to case worker Brenda Cagle. Ms. Cagle contacted the Phoenix Police Department ("PPD") to start a

criminal investigation regarding the allegation. The PPD assigned Defendant Detective Maria Acosta as the case agent for the PPD's criminal investigation of Plaintiff Kevin Crawford.

Tracy and Krystal went to Childhelp on June 18, 2006. They remained there for seven hours. At one point, Tracy Crawford called her husband in a recorded phone call and told him that she believed Krystal was telling the truth about the abuse. On that same day, another detective interviewed the other Crawford children.

Also while at Childhelp on June 18, Tracy Crawford related a story to Detective Acosta regarding an incident involving Kari Crawford. Mrs. Crawford told Detective Acosta that when her 13-year-old daughter Kari was three or four years old, Kari reported that her father had "taken her panties off and was starting to rub her" in private areas. Kari had no memory of her father touching her inappropriately.

On June 22, 2004, CPS officials and Detective Acosta advised the Crawfords that Kevin Crawford could have no physical contact with his children during the course of the investigation. They told him that either he had to remove himself from the family home or that CPS would remove the children from the home. Mr. Crawford chose to leave the home.

On that same day, Tracy Crawford allegedly told Detective Acosta that Mrs. Crawford's earlier statement that Kevin Crawford had rubbed Kari was inaccurate. Later, at her deposition, Tracy Crawford explained that her highly emotional state on June 18 caused her to make a rubbing allegation that did not occur and that Kari had never reported to her mother. Mrs. Crawford now claims that the actual incident likely involved Kari's exploratory play or "humping" discovered by Kevin Crawford.

Also on that day, Tracy Crawford told Detective Acosta that Krystal's allegations could not be true because on the date Krystal said Mr. Crawford abused her, Mr. Crawford was at the hospital with his wife. Mr. Crawford allegedly stayed by his wife's side at the hospital from her admission until her release because he obsessively feared the hospital would lose his baby or switch his baby for another baby. According to Tracy Crawford and her father, Kevin Crawford remained by Tracy's side during the births of all their children.

Plaintiffs claim that Detective Acosta did not take any action on the investigation from June 22, 2004 to July 21, 2004, despite Plaintiffs giving her exculpatory evidence. They also allege that Detective Acosta inconsistently described her progress in preparing her investigative report and told Tracy Crawford that she had lost part of the report in a computer failure. Detective Acosta allegedly also told Tracy Crawford that Detective Acosta didn't believe her report and opinions had any bearing on CPS's decision to allow Kevin Crawford to return home.

On August 2, 2006, Krystal's counselor, the same one who originally contacted CPS about the alleged molestation, sent a letter to CPS stating that he believed Kevin Crawford should return home. Rhonda Cash of CPS made the decision to allow Kevin Crawford to return home without consulting the PPD. Kevin Crawford returned to his home on August 2, 2004. The Maricopa County Attorney's Office decided not to file charges against Mr. Crawford. Mr. Crawford lived outside the family home for approximately six weeks.

## II. ANALYSIS AND CONCLUSION

### A. State Law Claims

Krystal's counselor reported Krystal's allegations of sexual abuse to CPS pursuant to A.R.S. §13-3620(A). A.R.S. §13-3620(A) reads, in pertinent part:

> A. Any person who reasonably believes that a minor is or has been the victim of physical injury, abuse, Child abuse, a reportable offense or neglect that appears to have been inflicted on the minor by other than accidental means or that is not explained by the available medical history as being accidental in nature or . . . shall immediately report or cause reports to be made of this information to a peace officer or to child protective services in the department of economic security, except if the report concerns a person who does not have care, custody or control of the minor, the report shall be made to a peace officer only. . . .. For the purposes of this subsection, "person" means:
>
> 1. Any physician, physician's assistant, optometrist, dentist, osteopath, chiropractor, podiatrist, behavioral health professional, nurse, psychologist, counselor or social worker who develops the reasonable belief in the course of treating a patient . . . .

Subsection J of the same statute provides immunity to persons who subsequently investigate the allegations of abuse. A.R.S. §13-3620(J) provides:

> A person who furnishes a report, information or records required or authorized under this section, or a person who participates in a judicial or administrative proceeding or investigation resulting from a report, information or records required or authorized under this section, is immune from any civil or criminal liability by reason of that action unless the person acted with malice or unless the person has been charged with or is suspected of abusing or neglecting the child or children in question.

Defendants here participated in the investigation of the sexual abuse allegations against Kevin Crawford. They claim that A.R.S. §13-3620(J) therefore immunizes them from liability for Plaintiffs' state law claims. A.R.S. §13-3620(J) does provide immunity for investigators, but only to the extent the investigators acted without malice. Arizona statutory law defines malice as "a wish to vex, annoy or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." A.R.S. §1-215(2).

No presumption of malice exists in this case. Plaintiffs therefore must produce sufficient proof of malice to defeat summary judgment. In their Response, Plaintiffs offered only the following regarding the alleged maliciousness of Defendants:

> Instead, Plaintiffs allege liability for the human Defendants' investigative conduct (constituting inaction) for 3-4 weeks which included conduct after clear exculpatory evidence was first made available just days after the police investigation began . . ..
> The facts of the instant case reflect that the primary investigator (Defendant Detective Acosta) and her supervisors (Defendants Bell, Sanders and Harris) knew PPD Operations Orders were violated when Defendant Detective Acosta failed to advise of the exculpatory evidence first given to her on June 22, 2004 and her 3-4 weeks of inaction relating to corroboration of same in violation of PPD Operations Orders 2.2.2.E(2), 2.3.1.A and 2.3.1.B(1), (2), (3). Reasonable jurors could find that the manner of Detective Acosta's unjustified delay, during which the family unit remained torn apart, was intentional and aimed to injuring the adults she perceived as criminals. Reasonable jurors could determine such intent also extended and/or transferred to the children.

(Doc. #58, p.17).

Notably, Plaintiffs do not make a single citation to the statement of facts or the record in support of their argument. Local Civil Rule 56.1(e) states that a memorandum of law filed in opposition to a motion for summary must include citations to the specific paragraph in the statement of facts that supports the factual assertion made in the memorandum. It is not this

- 4 -

1 Court's job "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 2 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted). The Court relies "on the 3 nonmoving party to identify with reasonable particularity the evidence that precludes 4 summary judgment." *Id.* Plaintiffs cannot defeat a motion for summary judgment with mere 5 speculation and allegation. *Nelson v. Pima Cmty College*, 83 F.3d 1075, 1081-82 (9th Cir. 6 1996) (stating, "[M]ere allegation and speculation do not create a factual dispute for purposes 7 of summary judgment.").

8 Although without proper citation, Plaintiffs do argue that Acosta's failure to advise 9 of exculpatory evidence and her inactivity for three to four weeks create an issue of fact as 10 to malice. Even if the Court assumes that Detective Acosta told Tracey Crawford that 11 Detective Acosta would not include any of the hospital stay information or other 12 "exculpatory" evidence in her police report, the record shows that Detective Acosta did in 13 fact supplement her report by including the hospital information and other information Mrs. 14 Crawford provided in the June 22 phone call. (Doc. #59, Exhibit 1). Accordingly, failure 15 to include the "exculpatory" evidence in the police report cannot serve as a basis for denying 16 summary judgment. That leaves only Plaintiffs' allegations of delay to support a finding of 17 malice.

18 Plaintiffs claim that Detective Acosta took no action on the Crawford case for three 19 to four weeks, despite having "exculpatory" evidence. The Court knows nothing about the 20 caseloads of Detective Acosta or her supervisors, but can imagine they oversee many cases. 21 Nor can the Court speak to the length of time police should spend investigating serious 22 allegations of sexual abuse. Even assuming Detective Acosta should have taken more action 23 on the investigation during the three to four week period, however, the Court does not find 24 that the delay in any way indicates malice. Plaintiffs simply have not pointed to any record 25 evidence that would permit a jury to make a finding of malice. The Court therefore grants 26 summary judgment to Defendants on Plaintiffs' state law claims. *See L.A.R. v. Ludwig*, 821 27 P.2d 291, 295 (Ariz. Ct. App. 1991) (granting summary judgment to counselor on child abuse 28 reporting claims where no evidence that counselor acted with malice).

**B. Federal Civil Rights Claims**

**1. Section 1983 Claim**

Children and parents have a constitutional right to one another's company. *Mabe v. San Bernardino County, Dep't of Pub. Soc. Serv.*, 237 F.3d 1101, 1107 (9th Cir. 2001). Plaintiffs argue that Defendants deprived them of that right in violation of 42 U.S.C. §1983. Defendants argue that no constitutional deprivation occurred; that, in any case, the individual officers have immunity; and that Plaintiffs have introduced no evidence of a policy or custom of constitutional violations.

A §1983 claim has two elements: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Johnson v. Hawe*, 388 F.3d 676, 681 (9th Cir. 2004) (internal quotations omitted). It is undisputed that the police did not remove Mr. Crawford from his home. He voluntarily left. Consequently, no constitutional violation can attach to Mr. Crawford's initial departure from the home.

Plaintiffs seem to argue that Defendants constructively removed him from the home. True, Detective Acosta and Ms. Cagle advised Mr. Crawford that he would either have to leave the home or CPS would remove the children from the home. But, as Defendants note, people can waive their constitutional rights. *United States v. Montilla*, 870 F.2d 549, 553 (9th Cir. 1989) (stating that forcing a choice between asserting a constitutional right and a compromise, while difficult for the decision maker, is not unconstitutional). The Court appreciates that Mr. Crawford faced a difficult choice, but he did make the choice.

If Mr. Crawford's departure from the home did not trigger any constitutional violations, did the length of the investigation? Mr. Crawford resided outside the home for approximately six weeks. Did Mr. Crawford have a constitutional right to a speedier investigation? Plaintiffs have cited no cases that so hold. The PPD was investigating allegations of sexual abuse of two different children. The Court cannot say that six weeks

1  is too much time to spend on such serious allegations.  The Court does not find that Plaintiffs
2  had a constitutional right to a speedier investigation.
3        Because no constitutional violation occurred, the Court will grant summary judgment
4  to Defendants on Plaintiffs' §1983 claim.

**2.  §1985**

6        In Count Six of their Complaint, Plaintiffs alleged causes of action under both 42
7  U.S.C. §1983 and §1985.  Defendants moved for summary judgment on the §1983 claim, but
8  made no mention of the §1985 claim.  The §1985 claim therefore still stands, and the Court
9  will treat the present motion as one for partial summary judgment.
10       Accordingly,
11       IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Doc.
12 #50) shall be treated as a motion for partial summary judgment.
13       IT IS FURTHER ORDERED GRANTING partial summary judgment to Defendants
14 on Counts One through Five of the Complaint and on the 42 U.S.C. §1983 claim of Count
15 Six.  Plaintiffs' 42 U.S.C. §1985 claim still stands.
16       DATED this 16th day of April, 2007.

_____
James A. Teilborg
United States District Judge